**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| THE C.P. HALL COMPANY, | ) | Case No. 11-26443 |
| Debtor. | ) | |
| JAMES SHIPLEY, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. ______________ |
| COONEY & CONWAY CREDITORS | ) | |
| Defendants. | ) | Honorable A. Benjamin Goldgar |

**COMPLAINT TO DETERMINE VALIDITY OF LIENS, AND FOR EQUITABLE SUBORDINATION, AND OBJECTION TO CLAIMS**

James Shipley, as personal representative of the Estate of Janet Shipley ("James Shipley"), by and through his undersigned counsel, for its complaint against Defendants, Cooney & Conway Creditors (defined below) states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

2. Venue is proper under 28 U.S.C. § 1409.

**Parties and Factual Background**

3. On June 24, 2011 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the

"Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois. This case was converted to a case under chapter 7 on October 22, 2012, and Joseph Baldi was appointed and now serves as the trustee.

4. The Plaintiff, James Shipley, is a creditor of this estate, having filed a proof of claim (Claim 17-1 on the claims register) for $3,295,332.40. That claim is based on a judgment described below, and includes interest on that judgment accrued to the Petition Date.

5. Cooney & Conway is a law firm that, on behalf of persons it represents, filed a proof of claims that arose before the Petition Date in the total amount of $91,570,107. That proof of claims, listed on the claims register as Claim 15-1, is attached as Exhibit A to this Complaint.

6. The Defendants in this proceeding are the persons who hold the alleged claims asserted in Claim 15-1 (the "Cooney & Conway Creditors"). They are identified in the Exhibits to Claim 15-1.

7. Claim 15-1 also asserts an administrative claim of $30,040,000, but the Defendants have not filed a motion seeking allowance of the administrative claim.

8. Claim 15-1 alleges that about 500 of the Cooney & Conway Creditors (the "2009 Creditors") settled asbestos personal injury claims against the Debtor and obtained judgments in June 2009. It further alleges that other groups of Cooney & Conway Creditors settled similar claims in 2010 (the "2010 Creditors") and 2011, and Claim 15-1 includes all the 2009, 2010 and 2011 claims.

9. Claim 15-1 asserts that $31,750,000 of the claims are secured by, among other things, liability insurance policies (the "Integrity Policies") issued by the Integrity

Insurance Company ("Integrity") to the Debtor, and that such security interest was perfected by the filing of Uniform Commercial Code financing statements.

10. According to Claim 15-1, the security interest in the Integrity Policies in favor of the 2009 Creditors was created by a Pledge and Assignment Agreement to Secure Debt dated June 25, 2009 (the "2009 Agreement"), which provides that, "[Debtor] hereby grants, transfers, sets over, pledges and assigns to the [2009 Creditors] all of the right, title and interest of [Debtor] in and to the Insurance Policies [including the Integrity Policies] to secure payment of the indebtedness of [Debtor] to the [2009 Creditors] . . . ."

11. According to Claim 15-1, the claims of the 2010 Creditors are secured by a Pledge and Assignment Agreement to Secure Debt dated July 28, 2010 (the "2010 Agreement").

12. The 2010 Agreement states: "[Debtor] desires to pledge and assign its interest in the Collateral . . . for the Plaintiffs for the purpose of resolving the C.P. Hall Litigation," and then purports to grant a security interest in substantially all of the Debtor's property.

13. Integrity went into a liquidation proceeding, and the Debtor asserted claims under the Integrity Policies.

14. On January 19, 2010, the liquidator issued five Notices of Determination of the Debtor's claims under the Integrity insurance policies (the "NODs").

15. On November 19, 2010, the Circuit Court of McLean County, Illinois (the "State Court") entered judgment against the Debtor and in favor of Janet Shipley for $3,000,000 as compensatory damages for an asbestos personal injury.

16. On December 1, 2010, Janet Shipley, as a judgment creditor, served a citation to discover assets on the Debtor (the "Citation").

17. Shortly thereafter, Janet Shipley died and James Shipley was appointed executor of her estate and substituted as the plaintiff in the lawsuit against the Debtor.

18. Under applicable Illinois law, upon service of the citation the Debtor was enjoined from transferring any personal property to third parties and the Plaintiff obtained a lien on all such property.

19. The Debtor's rights under the NODs were personal property of the Debtor. Consequently, the Debtor was enjoined from transferring its interests in the NODs and the Plaintiff had a lien on the NODs.

20. At all relevant times, Cooney & Conway, as attorneys for the Cooney & Conway Creditors, knew that that the Plaintiff had served a citation to discover assets on the Debtor and knew of the resulting injunction against the transfer of any personal property by the Debtor and of the Plaintiff's lien.

21. Notwithstanding the citation injunction and lien in favor of the Plaintiff, on April 11, 2011, the Debtor entered into an agreement to assign its claims under the NODs to Global Legacy Acquisitions L.P. ("Global").

22. On April 13, 2011, the Cooney & Conway Creditors acknowledged the assignment and signed the agreement with Global.

23. The parties to the assignment contemplated that the proceeds of the transaction would be paid to the Defendants on account of its clients' claims against the Debtor and their purported security interests in the Integrity Policies.

24. In May 2011, Global paid $15,859,893 to the Defendants under the assignment agreement. That amount was applied to the claims of the 2009 Creditors.

25. Those funds were proceeds of the assignment of the NODs and the Integrity Policies.

26. On June 15, 2011, the State Court entered an order on the Citation (the "Turnover Order") compelling the Debtor to pay to the Plaintiff "all funds in its possession or control on 12/1/10."

27. The Turnover Order made the lien created by the citation on funds in the Debtor's possession or control as of December 1, 2010, irrevocable, and that lien remains in full force and effect.

**Count I**

**Determination of Validity and Priority of Lien**

28. Under Federal Rule of Bankruptcy Procedure 7001(2), James Shipley is entitled to a determination of the validity of the security interests claimed in the proceeds of the Integrity Policies by him and by the Cooney & Conway Creditors.

29. James Shipley's citation lien extends to the proceeds of the Debtor's claims under the Integrity Policies made on or before December 1, 2010, including such proceeds now in the possession of the trustee.

**Count II**

**Determination of Validity and Priority of Lien**

30. Section 9-109(d)(8) of the Illinois Uniform Commercial Code states that "a transfer of an interest in or an assignment of a claim under a policy of insurance . . . " is excluded from Article 9.

31. The Defendants did not notify Integrity of the Debtor's purported assignment of the Integrity Policies or otherwise take the steps necessary to create a valid common law lien.

32. Consequently, the Defendants do not have security interests under either the Uniform Commercial Code or any other applicable law, and Claim 15-1 is unsecured.

**Count III**

**Determination of Validity and Priority of Lien**

33. Under Illinois law, assignments to deceased individuals are void.

34. Many of the persons identified as creditors in Claim 15-1 were dead before the judgments on which their claims are based were entered and before the Debtor's execution of the 2009 Agreement (with respect to the 2009 Creditors) and before the Debtor's execution of the 2010 Agreement (with respect to the 2010 Creditors).

35. Consequently, to the extent the 2009 Agreement and 2010 Agreement might otherwise create valid liens, they do not create such liens in favor of the Cooney & Conway Creditors who were dead before the dates of such agreements.

**Count IV**

**Determination of Validity and Priority of Lien – 2010 Agreement**

36. 810 ILCS 5 Section 1-201(35) (the "Illinois Uniform Commercial Code") defines a security interest as "an interest in personal property or fixtures which secures payment or performance of any obligation."

37. The 2010 Agreement does not state any such payment or obligation owed by the Debtor and thus did not create a security interest in favor of the Defendants under the Illinois Uniform Commercial Code.

**Count V**

**Equitable Subordination**

38. This is a claim for relief under § 510(c) of the Bankruptcy Code, which authorizes this Court to, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim."

39. Defendants' conduct, through their counsel, in participating in the assignment of the NODs and accepting the proceeds of that assignment, with knowledge of the citation injunction and lien in favor of the Plaintiff, was wrongful and inequitable.

40. Such wrongful and inequitable conduct injured the Plaintiff in that it deprived the Plaintiff of the opportunity to be paid the full amount of his claim from the proceeds of the NODs.

41. The subordination of the Defendants' claims to the Plaintiff's claim would not be inconsistent with any provision of the Bankruptcy Code.

**Count VI**

**Objection to Claim 15-1**

42. Judgments that purport to be in favor of persons who have died before the judgments are entered are void under Illinois law.

43. The claims asserted in Claim 15-1 are based on judgments entered under Illinois law.

44. Many, if not most, of the Cooney & Conway Creditors were dead before the judgments on which their claims are base were entered.

45. The creditors who were dead before the judgments on which their claims are based were entered have no rights to payment under Illinois law and therefore their claims must be disallowed under § 502(b)(1).

46. The administrative claim asserted in Claim 15-1 must be disallowed because a proof of claim filed under § 501(a) of the Bankruptcy Code may only be for pre-petition claims, and the Defendants have not filed a motion under § 503(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9013.

WHEREFORE, James Shipley seeks judgment in its favor and against Defendants, awarding the following relief:

(a) a determination that he holds a valid lien on the proceeds of Integrity Policies now in the possession of the estate;

(b) a determination that Claim 15-1 is unsecured;

(c) the subordination of Claim 15-1 to the claim of James Shipley and, if necessary, the subordination of any lien securing Claim 15-1, to the extent necessary to permit the payment in full of James Shipley's claim;

(d) the disallowance of those claims included in Claim 15-1 by creditors who were dead before the judgments that are the bases of those claims were entered;

(e) the disallowance of the administrative claim made in Claim 15-1; and

(f) such other and further relief as this Court shall consider proper.

Dated: August 15, 2013

Respectfully submitted,

JAMES SHIPLEY, as personal
representative of the Estate of Janet Shipley,

By: /s/ Ronald Barliant
One of His Attorneys

Ronald Barliant (ARDC #0112984)
Prisca Kim (ARDC #6306327)
GOLDBERG KOHN LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois 60603
(312) 201-4000